IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JAMES ANTHONY HUNTER, #19307 | § | |
| VS. | § | CIVIL ACTION NO. 6:23cv430 |
| LARRY SMITH, ET AL. | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff James Anthony Hunter, an inmate confined within the Smith County Jail proceeding *pro se*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging purported violations of his constitutional rights while incarcerated. The complaint was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

For the foregoing reasons, the Court recommends that Hunter's claims against Defendants Smith, Pinkerton, Rhode, Saxon, Smith County, and Boller be dismissed, with prejudice, for the failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1). Moreover, the Court recommends that Hunter's claims against the remaining defendants—allegations regarding his medical care and "solitary confinement"—remain before the Court.

**I. Plaintiff Complaints**

Plaintiff filed both an initial complaint, (Dkt. #1), and an amended complaint, (Dkt. #10), wherein he raises a multitude of claims regarding his confinement.

    A. Medical Claims

Hunter claims that he arrived at the Smith County Jail on July 31, 2023, (Dkt. #10, pg. 7), and he did not sign a consent document permitting Smith County medical, otherwise known as "Turnkey Health," to treat him—which resulted in him being placed on "suicide watch." He claims

that he refused to sign consent "because they are not going to give me the best medical care," and that he was prescribed blood pressure medication prior to his incarceration. He claims that "Turnkey" is "forced" upon him "all in an attempt to block [him] from receiving adequate and proper care from outside facilities."

He complained about the hot temperatures inside his cell, which resulted in chest pains. Jail officials placed a "fan outside in the front of [his cell]." Hunter explained that Dr. White checked his blood pressure, which was normal. He also notes that he is "without his prescriptions," and that jail officials give medications "they choose per Turnkey," and that nurses do not bring his medication at the proper time or at all. He stressed that Turnkey provides poor medical care and that he does not consent, yet it is "forced upon him" and is limited.

### B. Conditions of Confinement

Hunter alleges that Defendants placed him in "solitary confinement," which that he "succumbed to feces smeared" for days inside his cell—along with cockroaches and mice. Defendant Shoemaker told him to "stay in it for a couple of days to teach [him] a lesson." Defendant Rhode remarked that he was housed in "solitary confinement" because it was where he "belonged," and that he would remain there for a "long time." Hunter argued that he "did nothing wrong to be placed in solitary confinement," and that no other inmate is forced to be in handcuffs and shackles when exiting a cell.

### C. Access to Courts and Property

Hunter states that on July 31, 2023, he informed Defendant Rhode that he needed his legal materials because he had deadlines to meet for court submissions. He states that "he gave me what he wanted me to have and not necessarily what I needed. He discarded others." Hunter also claims that he only has 15-minute increments with 3-hour intermissions within a 12-hour shift to use the

tablet, which is his only access to courts and the law library. However, he states, also within those 15-minute increments, he must also write his letters, forms, sick calls, grievances, video visitations, commissary list and look at pictures. He does not have family to purchase additional time for him. Defendant Saxon told him that he had a lawyer, so he was not entitled to ample time for law library. Jail officials also read his legal documents when they search his cell and Saxon asked for him to prove that he is pro se. He states that his mail is not going out and discovered eight outgoing letters "stashed in a container behind a box of gloves."

## II. *Spears* Hearing Testimony

On January 17, 2024, the undersigned presided over a *Spears* hearing wherein Plaintiff Hunter testified under oath regarding his claims. *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) ("We see no reason why a district court may not, in lieu of such questionnaires, refer the case to a magistrate to hold an evidentiary hearing 'in the nature of a motion for a more definite statement.'"); *Taylor v. Vicky*, 337 F. App'x 412, 415 (5th Cir. 2009) (unpublished) ("A *Spears* hearing is not designed to be a discovery tool or a trial on the merits, but rather is akin to a motion for a motion definite statement."). Stated differently, a *Spears* hearing is akin to an amended complaint. *See Lee v. Hennigan*, 98 F. App'x 286, 287 (5th Cir. 2004) (unpublished).

At the beginning of his testimony, Hunter stated that, for his medical claims, he was treated for "suicide watch" and that Turnkey is "forced upon" him. He stated that he is without his prescriptions—and that his mental health issues are "too complicated" for the jail. Consistent with Plaintiff Hunter's initial complaint, the Court inquired of Plaintiff's claims by addressing Hunter's allegations against each named Defendant:

### 1. Defendant Saxon

Hunter testified that Defendant Saxon reviewed his jail grievances but deemed them "unfounded" "for everything."

### 2. Defendant Shoemaker

Hunter testified that Shoemaker "upheld" Turnkey and that he would not oppose or intervene in decisions concerning solitary confinement. Hunter stated that Shoemaker remarks that he is a threat, and that Shoemaker is trying to "destroy" him mentally. He also noted that Shoemaker states that he will go to population.

### 3. Defendants Pinkerton, McCarver, and Stroud

When asked about Defendant Pinkerton and McCarver, Hunter testified that he had housing classification issues with him. Defendant McCarver, specifically, was the lieutenant for classification—and Hunter testified that he "won't rehouse him." Hunter testified that Defendant Stroud remarked that he has no control over an inmate's housing and that "he belongs there."

### 4. Defendant Martin

Hunter testified that he is forced to remain in "isolation" and Martin will not "take [him] out." He also testified that Martin makes his family wait when they come to visit.

### 5. Turnkey Health

Hunter testified that Defendant Turnkey acts with neglect and is not treating him for his mental health needs. He stated that it does not "provide what he needs," and his medicine is not updated.

### 6. Defendants Boller and Smith County

Hunter testified that Defendant Boller is verbally abusive and provokes. Defendant Smith County, moreover, does not provide him access to courts because it says he has to be pro se. He

also testified that he experiences delays in receiving mail and that the Jail does not permit private phone calls—as all are recorded, even if communicating with an attorney.

### III. Legal Standards

Under 28 U.S.C. § 1915A, a court shall review, before docketing if feasible or in any event as soon as practicable after docketing, any complaint in a civil action wherein a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v, FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed

factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

**IV. Discussion and Analysis**

Hunter's testimony at the *Spears* hearing operates as an amended complaint or a more definite statement. *See Hirsch v. Fortner*, 192 F. App'x 279, 279 (5th Cir. 2006) ("A *Spears* hearing is in the nature of an amended complaint or a more definite statement.") (internal citation omitted); *see also Spears v. McCotter*, 766 F.2d 179, 180-81 (5th Cir. 1985). A review of Hunter's initial complaint and the testimony offered during the *Spears* hearing shows that Hunter failed to state a claim upon which relief can be granted on his claims concerning the alleged denial of access to courts. Further, because he wholly failed to plead personal involvement, Hunter's claims against Defendants Smith, Pinkerton, Rhode, Kettler, and Boller should be dismissed.

By separate order, the Court will direct Defendants Turnkey, Shoemaker, McCarver, Martin, and Stroud to file an answer or otherwise plead to Plaintiff Hunter's remaining claims consisting of his medical care and placement in "solitary confinement."

A. Section 1983 and Personal Involvement

Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (must be an affirmative link between injury and conduct of defendant)). The Fifth Circuit has held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any

6

vicarious liability theory." *See Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992). In describing "personal involvement," the Supreme Court denoted that "there must be an affirmative link between the incident and some act by the defendant." *Rizzo*, 423 U.S. at 363; *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed.").

Here, Hunter failed to allege personal involvement for Defendants Smith, Pinkerton, and Rhode. During the *Spears* hearing, when asked about is claims against Defendant Pinkerton, Hunter testified "classification issues," with no accompanying facts, details, or specifics linking Pinkerton to any act or omission. Similarly, Hunter offered no facts and did not mention Defendants Rhode or Kettler. With respect to Defendant Smith, Sheriff of Smith County, Hunter offered no specifics facts or details connecting him to any of his allegations. These defendants should be dismissed for Hunter's failure to state a claim against them upon which relief may be granted.

### B. Jail Grievances

During the *Spears* hearing, Hunter testified that Defendant Saxon deemed his grievances "unfounded" "for everything." He elaborated no further—failing to describe the grievances, how it was deemed "unfounded," or how the denial of jail grievances constitutes a violation of his constitutional rights. Such conclusory allegations fail to state a claim upon which relief may be granted. It is also well-settled that inmates do not have the right to have their grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Hunter's claims against Defendant Saxon should be dismissed.

C. Verbal Abuse

Hunter further testified that he was suing Defendant Boller for "verbal abuse," and mentioned provoking and "stuff like that." Once again, Hunter failed to present specifics or details—which is insufficient to impute liability. Furthermore, it is well-settled that verbal harassment, without more, cannot and does not amount to a constitutional violation. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). In *Calhoun v. Hargove*, the Fifth Circuit held that verbal abuse and requiring a prisoner to beg for food did not provide a basis for an actionable claim under section 1983. 312 F.3d 730, 734. The Fifth Circuit explained as follows:

> [I]n the Eighth Amendment context, our circuit has recognized as a general rule that "mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." *McFadden*, 713 F.2d at 146 (quoting *Coyle v. Hughes*, 436 F. Supp. 591, 593 (W.D. Okla. 1977); *accord Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.) (the use of words, no matter how violent, does not comprise a § 1983 violation), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state a constitutional deprivation under § 1983).

*Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995). Accordingly, Hunter's claim that Defendant Boller engaged in "verbal abuse," without more, presents no constitutional issue and his claim against Boller should be dismissed.

D. Access to Courts

Hunter maintains that Defendant Smith County violated his rights to access the courts because jail officials remarked that he "ha[d] to be pro se," and that he experiences a delay in receiving mail. He also maintains that the Jail will not "allow private calls" and that they record all conversations even with an attorney.

The Supreme Court has stated that this right to access courts encompasses no more than the ability of an inmate to prepare and transmit a *necessary* legal document to the court. *Id*. (citing *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (internal quotations and footnote omitted));

8

*see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (explaining that the right "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.").

However, prisoners must demonstrate an actual injury to demonstrate a violation of this right. *Lewis*, 518 U.S. at 351; *see also Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (explaining that the Supreme Court, in *Lewis*, "held that an inmate alleging denial of access to courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct."). Similarly, a plaintiff claiming a denial of access to courts through mail tampering must show that his legal position has been prejudiced by the alleged mail tampering. *See Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993).

Here, Hunter failed to plead any harm or actual injury. While he testified that there are delays in receiving mail, he failed to elaborate and failed to describe how he was harmed by any delayed mail. To the extent he complained that he could not access the courts, he failed to indicate that he had no opportunity to file a necessary document to the court. In fact, the docket in this case alone reflects Hunter's ability to prepare and file documents—which necessarily refutes his claim that he does not have access to the court.

Turning to his claim concerning private phone calls, Hunter again failed to provide specifics and facts detailing how the denial of private phone calls violated his rights. Moreover, Hunter sues Smith County in connection with his telephone and mail claims. But under the Federal Rules of Civil Procedure, a party to a lawsuit must have the capacity to be sued. Fed. R. Civ. P. 17(b). A department of a local government entity must "enjoy a separate legal existence" to be subject to a lawsuit. *See Darby v. Pasadena Police Dep't.*, 939 F.2d 311, 313 (5th Cir. 1991).

9

The Fifth Circuit has held that Texas law does not allow county or municipal police departments to be sued directly. *Id*. at 313-14; *see also Crull v. City of New Braunfels, Tex.*, 267 F. App'x 338, 341-42 (5th Cir. 2008) (unpublished) ("Therefore, the Police Department is not a separate legal entity apart from the City and the district court did not err in dismissing the claims against the Police Department.").

Accordingly, any claim against Smith County should be dismissed. *See Darby*, 939 F.2d at 313; *see also Pogorzelski v. Dallas Police Dep't*, 2020 WL 5045673 *2 (N.D. Tex. Aug. 5, 2020 ("As judges of this Court have repeatedly recognized, the Dallas Police Department is not a jural entity subject to suit."); *Lane v. Athens Police Dep't.*, 2006 WL 1049966 at *3 (E.D. Tex. Mar. 24, 2006 ("While he does sue the Henderson County Jail, the jail is not a separate legal entity and cannot be sued in its own name."). Hunter has failed to state a claim upon which relief may be granted against Defendant Smith County, and his claims against it should be dismissed.

## RECOMMENDATION

For reasons expressed above, it is recommended that Plaintiff Hunter's claims against Defendants Smith, Pinkerton, Rhode, Saxon, Smith County, and Boller be dismissed, with prejudice, for the failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1) after an evidentiary hearing.

The Court further recommends that Hunter's claims concerning his medical care and placement in "solitary confinement" against Defendants Turnkey, Shoemaker, Martin, McCarver, and Stroud proceed before the Court.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 26th day of March, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE